GASPARD THEURER *v.* LOUISA SCHMIDT.

Negotiable notes made by the husband and donated to the wife, cannot be enforced against the husband, when it neither appears that the transfer of them was made by the wife with the authorization of the husband, nor that the holder was a *bona fide* holder for value.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Dufour*, for plaintiff and appellee:

1. Proceedings to annul the acts of the wife for want of authority, can be instituted by the husband. Art. 131 C. C.

All donations made between married persons, during marriage, are always revocable. Art. 1742 C. C.

All donations disguised, or made to persons interposed, between husband and wife, are null and void; and this nullity, being considered by jurisconsults as absolute, may in all cases be invoked by the contracting parties. Art. 1747 C. C.; 1 L. R. 186; 4 R. 214; 5 Annual, 579; 6 Annual, 676: 7 Toullier, No. 558; 6 Toullier, 76, *et seq*; 4 Marcadé, p. 245, 286.

2. The true character of the act of mortgage may be shown by parol, because it is alleged to have been made in contravention of an express provision of the law. Art. 1747; 8. N. S. 694; 4. R. 509; 1. Greenleaf No. 284.

The witness offered to explain the real object of the act of mortgage is the mortgagee himself, the other party to the notarial act, which is allowed by law. 9 R. 379.

3. Leaving aside the act of mortgage, and considering only the subsequent gift and delivery of the notes to the plaintiff's wife, the donation was null, because not clothed with the formalities required in such cases by law. Art. 1523 C. C.; 12 R. 76; 7 N. S. 425.

4. *Bischoff* has admitted he obtained the notes from his sister-in-law, without her husband's consent. The wife cannot grant or alienate, unless the husband yields his consent in writing. Art. 124 C. C.

A married woman cannot contract, unless the incapacity is removed in the manner provided by law. Art. 1775, 1779, C. C.

The transferror, being the plaintiff's wife, she had no right to sue her husband upon the notes, and therefore could not assign any to her endorsee. *Non dat qui non habet.* 1 Rob. 220; 6 Rob. 276; 5 M. 161.

5. The real issue involves, after all, an ordinary question of commercial law. Is *Bischoff's* possession of the notes legal or not? The contest is on *Bischoff's* title. He is shown affirmatively to have known from whom he was taking the note, and to have been aware of the existence of the equities and legal defences of the maker thereof. Notes taken under circumstances affording reasonable grounds for suspicion, are taken at the risk of the taker. 13 L. 116.

If the person be not what the law considers a *bona fide* holder, and if at the time he received the paper, he knew that circumstances existed which rendered it improper that the payment should be enforced, he will not require any better interest in the same than the party had who transferred it to him. Chitty on Bills, p. 263; 17 L. 158; 18 L. 94; 5 L. 49; 14 L. 256; 3 N. S. 291.

*Schmidt*, for defendant and appellant.

*C. Maurian*, for *Bischoff*, one of the appellants:

WHAT WOULD BE THE RIGHTS OF LOUISA SCHMIDT, SUPPOSING THE NOTES WERE STILL IN HER POSSESSION?

If *Louisa Schmidt* was still in possession of the notes and she was claiming the payment thereof from the plaintiff, he would, as he has done here, plead simulation and the revocation of the donation on account of ingratitude of the donee.

Well, independent of the turpitude on which he must rely to establish the simulation, and which, as we think, would oblige a judge to throw his defence out of court, *Theurer* would find himself between two pleas irreconcilable one with the other; for if there was simulation, the donation would never have any existence, for what is simulated is not real, and consequently there would be no

occasion for a revocation. On the other hand, asking a revocation for one of the causes provided by law, is tantamount to an acknowledgment of the existence and reality of the donation.

It is not for us to reconcile these contradictions. We will only try to show that neither on the ground of simulation or that of revocability, could *Theurer* succeed against *Louisa Schmidt*.

1st. ON THE PLEA OF SIMULATION.

Before the court *à quâ Theurer* was allowed to establish the simulation of an authentic act to which *Louisa Schmidt* was a complete stranger, and in which *Theurer* acknowledged himself indebted to *Merano* and *Revoil* in a sum of $25,000, for which he gave three promissory notes of $8,333 33 1-3 to his own order and by him endorsed in blank, bearing mortgage on the property described, which notes were delivered to *Merano*. Such an act made full proof, of itself, of every thing it contained. It could only be varied by a counter letter from *Merano* and *Revoil*. None existed—none could be produced. But the judge *à quo* permitted the introduction of parole evidence to contradict and vary the act. The introduction of the testimony was opposed, but, notwithstanding the opposition, it was admitted. Fortunately, a bill of exception was taken, reserving all rights against the violation of the law, and we trust the testimony will be disregarded by this honorable court. We rely upon that principle so often laid down by our Supreme Court, "that in the absence of an allegation of fraud or error, the only proof admissible between the parties to a written contract or their representatives to prove simulation or conditions and stipulations beyond those contained in the written instrument, is a *counter letter* or something equivalent." C. C. 2256; C. C. 310, Art. 342; *Wall* v. *Hampton*, 2 N. S. 364; *Rawle* v. *Fenessy*, 6 New S. 206; *Dalon* v. *Lacroix*, 8 N. S. 448; *Maignan* v. *Gleises*, 4 Loui. 1; *Badon* v. *Badon*, J. C. 169; *Broussart* v. *Sudrique*, J. C. 351; *Purdon* v. *Linton*, 9 Lou. 566; *Liautaud* v. *Baptiste*, 3 R. 441; *Citizens' Bank* v. *Tucker*, 6 R. 443; *Macarty* v. *Canal Co.* 8 R. 102; *Dabadie* v. *Poydras*, 3 An. 153; *Wilson* v. *Phillips*, 4 An. 158; *Gautier* v. *Briault*, H. 487; *Fuselier* v. *Fusilier*, 5 An. 132, &c., &c.

The simulation of the act of October 1st, 1850, could therefore not be legally maintained.

2d. ON THE GROUND OF REVOCABILITY OF THE DONATION ON THE GROUND OF INGRATITUDE.

In order to obtain the revocation of a donation for any cause whatever, there must be a donation. Well, if, as we have contended above, the act of the 1st October, 1850, must stand as full proof of its contents, and if that act could be construed as a donation, which is more than doubtful, who would be the donor? *Gaspard Theurer?* Who would be the donees? *Merano* and *Revoil?* *Louisa Schmidt* would be a stranger to the act, and the revocation of it could not be prosecuted against her. On the other hand, admit that the parole evidence could have been legally admitted, what then? Why the donees would still be *Moreno* and *Revoil*, and they would have donated the notes to *Dufour*, and *Dufour* would have donated them to *Louisa Schmidt.—Louisa Schmidt* would then be the donee of *Dufour*,—and if so, how could *Gaspard Theurer* ask the revocation against her? We do certainly not attach much weight to this reasoning, except so far as it tends to show a state of things so absurd, that it adds a new ground for rejecting parole testimony.

But, we will go further and consider the question as if we had before us a clear, direct, undisputed donation from *Gaspard Theurer* to his wife, *Louisa Schmidt*, could *Theurer* obtain the revocation of it on the ground of adultery? We say he could not.

The 1547th Art. of the Civil Code says : "Revocation on account of ingratitude can take place only in the three following cases :

1st. If the donee has attempted to take the life of the donor.

2d. If he has been guilty towards him of cruel treatment, crimes or grievous injuries.

3d. If he has refused him food when in distress.

We pray the court to remark that our Art. 1547 is literally copied from the 955 Art. of the Napoleon Code.

In the case before us, it is not alleged and cannot be contended that *Louisa Schmidt* has either attempted to take the life of *Gaspard Theurer*, or that she has refused him food when in distress.

The 1st and 3d paragraphs of Art. 1547 may therefore be left aside, as not applicable to the case.

There remains, therefore, the second paragraph, to wit: "If the donee has been guilty towards the donor of cruel treatment, crimes, or grievous injuries."

The charge is adultery.

Does adultery come within the appellation of cruel treatment, crimes, or grievous injuries?

If it does not, then it is no cause of revocation of a donation on account of ingratitude.

We have already said that the 1547 Art. of our Code is verbatim the same as the 955 Art. of the Code Napoleon.

The French for "Cruel treatment, crimes, or grievous injuries," are both in the Napoleon Code and in the French part of our own Code, "Sevères délits ou injures graves."

What is the signification of these words according to the French writers commenting on the 955 Art. of the Napoleon Code?

Rognon, Codes Français expliqués, on Article 306 of the Napoleon Code, says:

"Les excès sont les actes violents qui peuvent mettre en danger la personne; par *sévices* on entend tous mauvais traitements moins violents mais habituels.— Les *injures graves* résultent d'actions, paroles ou écrits outrageants qui portent atteinte à l'honneur."

The same author, on the 955 Art. of the Napoleon Code, says:

"Nous avons expliqué article 305 ce qu'on entend par sévices et injures graves. Les délits contre la *personne* du donateur sont ou des sévices ou des injures. Ainsi celui qui fait des blessures ou porte des coups au donateur se rend coupable envers lui d'un délit (Article 309 Code Pénal) qui se confond avec sévices. Celui qui le calomnie est coupable d'un délit (Article 307 Code Pénal) compris dans les mots *injures graves*; mais les délits contre les *propriétés* du donateur, par exemple un vol, (Article 379 Code Pénal) suffiraient aussi pour prouver l'ingratitude du donataire et pour révoquer la donation, comme l'a jugé la Cour Suprême par arrêt du 24 décembre, 1827. (Sirey, Tome 28, 1, 256.)

Merlin Rep. Jur. verbo Delit: "Ce terme pris dans son acception la plus étendue désigne et les crimes proprement dits, let toutes es actions répréhensibles dans l'ordre social," faire ce que défendent, et ne pas faire ce qu'ordonnent les lois qui ont pour objet le maintien de l'ordre social et la tranquillité publique est un délit. "Nul délit ne peut être puni de peines qui n'étaient pas prononcées par la loi avant qu'il fut commis."

Same author, same work, *verbo injures*: "Outrages par paroles, ou par écrit ou par voies de fait." (☞ the explanations and examples given.) Touillier Ed. Bruxelles, Vol. 3, p. 92, No. 322, *et seq;* Ib. Vol. 1, p. 164, No. 669 *et seq;* Marcadé, Vol. 3, p. 695.

VOORHIES, J. The plaintiff alleges that he was married to *Louisa Schmidt* about seven years ago, and has ever since treated her with kindness and affection; that in the latter part of 1850, she besought him to make her some sort of provision, in case he should die before her, to which he consented, with a view to secure his domestic quiet; that, in order to give effect to her desire, on the 1st of October, 1850, he executed a mortgage wherein he acknowledged having made to his own order, and by him endorsed, three promissory notes, each for the sum of $8333 33 1-3, at 12, 18 and 24 months, which notes were forthwith delivered over to her by *Etienne Mérano* and *Daniel Revoil,* the common friends of the parties, with the understanding that the same might be enforced against his succession; that, shortly after this, she deceived and betrayed him in the most outrageous manner; she became dissipated and kept close company with a certain individual named *P. Massip,* with whom she was seen at undue hours, and from whom she received and preserved a variety of love-letters; that, upon his remonstrance against her conduct, she left and abandoned his house, and carried away a portion of his household effects; that all of these acts are grievous injuries inflicted on a husband's honor, and calculated to bring him into public disgrace and contempt with his neighbors; that from

THEURER
v.
SCHMIDT.

her gross ingratitude, said donation has become null and void ; that, prompted by lucre, and with a view to make him liable for these notes, which she well knew were only intended to be used in case of his death, she combined with her brother-in-law, *George Bischoff*, and also with the house of *Dufour, Durand & Co.*, wherein said *Massip* had formerly been a clerk, and fraudulently and collusively passed the same to them, although they knew full well that she had no right to do so. He therefore prays that she be cited, and that a decree of divorce or separation from bed and board be granted in his favor against her ; that the donation be revoked, and the notes declared void and restored to him ; that *Bischoff* and *Dufour, Durand & Co.* be also made parties to show cause why they should not return him said notes, on the grounds set forth in his petition, and on the further ground that they are not *bona fide* holders, not having given any consideration, and knowing also that *Louisa Schmidt* had no right to transfer the same, and had done so against his will. The plaintiff filed a supplemental petition alleging that *Bischoff* had admitted, under oath, his possession of the notes in question, one of which was placed by him in the hands of *Dufour, Durand & Co.* for collection in bank ; and therefore prayed that said *Bischoff* and *Dufour, Durand & Co.* be enjoined from making any disposition of said notes during the pendency of the suit.

*Louisa Schmidt* filed an exception, which was sustained by the District Court, that an action of divorce, or separation from bed and board, could not be cumulated with other causes of action, especially against third persons. The plaintiff, under this exception, having, by an amendment of his petition, made choice of the other cause of action and abandoned the action for divorce, she filed another exception, which was also sustained by the court, that the present action could not be maintained against her during the existence of the marriage.

*Bischoff* next appeared with an exception, alleging that before he was cited, he had already instituted an action against the plaintiff to recover the amount of the notes in controversy, of which he is the true and lawful owner ; that if the plaintiff had any defence to make against them, he must make the same in the Fifth District Court of New Orleans, wherein that suit is now pending. He also urged as a peremptory exception, " that all the facts and circumstances disclosed in plaintiff's petition for the purpose of annulling the notes and mortgage are illegal, immoral, contrary to public policy, and intended as a fraud upon the law and the public."

The answer of *Dufour, Durand & Co.*, after pleading the general denial, is that they were absent and represented by their clerk, *Delhoste*, when on the 27th of March, 1852, *P. Massip*, formerly a clerk of theirs, came to their store in company with another individual unknown to them and to *Delhoste*, and requested the latter to render said person the service to place in bank for collection a certain promissory note of $8333 33 1-3. which note was placed by *Delhoste* in the Bank of Louisiana for collection, was protested for non-payment, and on the 5th of April, 1852, returned back to the same person always accompanied by *P. Massip*, &c. They also claimed of the plaintiff in reconvention the sum of $20,000, as damages for slander, &c. It is deemed unnecessary to notice other parties and pleadings in the cause.

After hearing the evidence and disposing of other questions involved in the litigation, the judge *à quo* proceeds to remark in his decision on the merits of the cause as follows : " The evidence, in my opinion, discloses an unprinci-

pled combination on the part of a wife and brother-in-law against the honor and fortune of an injured husband; the allegations on this point are fully sustained by the evidence. Setting aside the illegality of *Bischoff's* title, as being derived from a married woman, without her husband's consent, it is manifest that *Bischoff* in fact gave nothing for the notes and has no interest in them whatever, except as the means and instruments of plunder. I deem it unnecessary to recapitulate the evidence, the details of which are alike conclusive and revolting. The plaintiff is, in my opinion, clearly entitled to a judgment." *Bischoff* is appellant from that judgment.

It has been strenuously urged that the plaintiff's action is not maintainable, because he is not permitted to set up his own turpitude. The allegations of the petition, as we have seen, do not give any sanction to such an assumption. But it is insisted that the evidence discloses the fact that the act was perpetrated by the plaintiff, with intent to defraud his child, issue of his former marriage. The evidence on this score does not appear to have satisfied the District Judge, and, from our own examination, we are not ready to say that he erred in his conclusion.

The ground urged by *Bischoff*, that he held the notes in controversy in good faith and for a valuable consideration, we concur with the judge à quo in his conclusion, is entirely unsupported by proof.

We do not think the District Judge erred in holding that parol evidence was admissible to prove the consideration of the notes in controversy. In the case of *Klein* v. *Dinkgrave*, 4 An. 540, the court said: " It would be superfluous to cite authority to show with what liberality parol evidence is admitted to ascertain the equitable rights of the parties litigant in suits upon bills and notes." 6 N. S. 566; 3 L. 261; 9 R. 183. If such evidence be available to the maker of a promissory note to sustain his plea of want of consideration in an action brought against him by the holder, we can perceive no reason why it should not be equally available to the maker where he asserts his right to the restoration of his notes, as in the present case.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed with costs.