The opinion of the court was delivered by
MoEnery, J.
This is a petitory action instituted by the plaintiff corporation against the defendants, who it is alleged “without any shadow of right or title” have entered upon a tract of land owned by plaintiff and described as the S. E. 1-4 of the S. W. 1-4; the E. 1-2 of the N. W. 1-4; the W. 1-2 of the N. E. 1-4; the S. W. 1-4 of the N. E. 1-4; the E. 1-2 of the S. W. 1-4; the S. E. 1-4 of the N. E. 1-4, Section 17, T. 17, R. 1, E., containing four hundred acres. It is alleged that the defendants are trespassers and have destroyed a large quantity of valuable timber and are still wasting the same to the great injury and damage of plaintiff; and that said defendants have occupied and cultivated said land for a period of five years. The prayer of petitioner is that the plaintiff recover judgment against the defendants, decreeing plaintiff to be the lawful owner of said land, and in the sum of five hundred ($500) dollars on account of the destruction of the timber on said land, and for four thousand ($4000) dollars for the use and occupancy of said land to the last day of January, 1892, and eight hundred ($800) dollars annually from said date until the delivery of the property to petitioner.
The defendants filed an exception to the suit on the grounds, (1) *1239 that there is a misjoinder of parties; (2) that the allegations in the petition are vagne, indefinite and insufficient; (8) that plaintiff is without capacity to bring this suit, there being no such corporation under the laws of Louisiana as the Vicksburg, Shreveport & Pacific Railroad Company.
The exception was overruled and the defendants answered in substance as follows: That the plaintiff corporation has no title whatever to the land sued for, and that the claim for damages is extortionate, far exceeding the value of the land.
That the mortgage of said lands granted to said corporation by the Federal government by Act 3 of June, 1856, is null and void, as the road could sell only twenty miles of said lands at a time, as said road was completed; and therefore the State, holding the lands in trust for the purpose of constructing the road, could not authorize the mortgage of said lands for the uncompleted portion of the road.
That on June 3, 1866, all the lands between the Ouachita and Red rivers reverted to the Federal government, as on that date the road had not been completed, and became part of the public domain, and the defendants had the right to enter upon and homestead the same.
That the road was not located as provided by act of the Legislature in 1857, and they deny that the lands granted to the railroad were ever transferred to plaintiffs, directly or indirectly, in the proceedings of Henry R. Jackson et a Is. vs. Jno. T. Ludeling et ais., or were ever seized or sold by the marshal, or that said lands could be seized or sold, in any manner, for debt, or transferred, until the road had earned the same by its completion. That the Federal government, through its Interior Department, has refused to issue patents to plaintiff for said lands. That the road was not constructed on the faith of the grant of said lands; that the Legislature in 1879 declared the grant forfeited, and in 1886 declared that said road had no title to said lands. That the United States Register of the Land Office advertised said lands for entry, and defendants went on the same in good faith, believing them to be subject to homestead occupation. Defendants, separating in their defence, aver that each has made application for homestead entry, and designates the quantity of land applied for by each. The answer sets out alleged oppressive acts of plaintiff and prays for damages to the amount of five hundred ($500) dollars.
The case was tried by jury and a verdict returned in favor of the *1240 plaintiff, as follows: “Pull possession of all the lands sued for in this case (situated in section 17) and all the improvements thereon; said improvements going in lieu of and to offset the claim of the plaintiff for rent and damages, including rents for the present year.” A judgment in favor of the plaintiff was entered in accordance with this verdict, except the order to deliver possession by January 1, 1894.
To this judgment the plaintiff excepted on the ground that it was not in accordance with the verdict, and assigned this as error. At this time we state that the delivery to the plaintiff could have been demanded when the judgment became final, and this extension of time could not injuriously affect the defendants.
Exception.
1. The petition charges that the defendants are trespassers upon the land to which the plaintiff asserts title. It is immaterial whether they set up claim to any particular part of the land as long as they are trespassers, without title, and possess the same, adversely to the true owner. They are sued jointly as naked possessors, and they haye a common issue in resisting plaintiff’s title. The defence of one is the defence of all the defendants, as each holds by virtue of the same title and are jointly interested in being maintained in possession. The primary question at issue is title to the property, and all the defendants are alike interested regardless of the quantity of land possessed by each. Derbes et al. vs. Romero, 28 An. 644.
2. There is no force in this objection. The petition contains every necessary and essential averment for maintaining the action.
8. We fail to see the application to defendants’ argument to the facts in this case. The record is against the pretensions of the defendants. The plaintiff acquired title through the foreclosure sale, December 1, 1879. The mortgage creditors purchased the mortgaged property and organized the present company. The organization was perfected, literally, in conformity to Act 88 of 1877, and a statement of the organization and formation of the corporation in compliance with Sec. 8 of the act was filed with the Secretary of State. The defendants objected to the copy of this statement certified by the Secretary of State being introduced in evidence, because the act of incorporation was not made by authentic act, and the copy was not. a copy of the authentic document which proves itself. The act did *1241 not require the formation to be by authentic act, and following the plain direction of the statute was sufficient. The statement of the formation of the company or corporation, when filed, became a part of the public archives and a certified copy of same is to all intents and purposes a copy of an authentic act, and authorizes its introduction as evidence. State vs. Cannon, Sheriff, 45 An., 1231; State vs. Lake, 45 An. 1207.