(43 South. 897.)

No. 16,405.

GILL et al. v. CITY OF LAKE CHARLES et al.

(April 29, 1907.)

1. PARTIES—JOINDER.

Our Code of Practice makes no provision for determining when parties may or may not be joined either as plaintiffs or defendants. We have to be guided in that regard by the well-settled rules of pleading as found in the books of common law, according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest, or where the defendants would be embarrassed in their defense, or delays would be caused, or complications arise, in connection with costs, or otherwise.

2. MUNICIPALITIES—ACTION BY TAXPAYERS—JOINDER OF PARTIES.

Taxpayers may join in one suit for the purpose of preventing the illegal disposition of the property of the municipality; and so may property holders along a street to prevent an obstruction of the street; and so may property holders for the purpose of contesting the right of the municipality to grant to a railroad company a right of way along a so-called street traversing their several properties which, they claim, is not in fact a street, but private property belonging to them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 2198.]

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by Hardy C. Gill and others against the city of Lake Charles and others. Judgment for defendants, and plaintiffs appeal. Reversed.

Schwing & Moore, for appellants. Thomas Thompson Taylor, for appellees.

PROVOSTY, J. The city of Lake Charles is situated on the shore of Lake Charles. An ordinance of the city has granted to the St. Louis, Watkins & Gulf Railway, a franchise giving it the right and power to construct and operate a steam railroad along the lake front from Clarence street to Broad street. The plaintiffs, eight in number, allege that they are citizens and taxpayers of the city, and owners of the property abutting upon the lake between the said Clarence and Broad streets, and also of the riparian rights pertaining to said property; that the so-called Front street, along which said franchise is given, has never been dedicated or expropriated as a street, and is not a street, but at best "an easement by the owners for passage on foot and in ordinary vehicles"; that, by the construction and operation of said railroad, said easement would be either destroyed or rendered dangerous and impracticable, and petitioners' said property would be cut in two, deprived of its said riparian rights, and rendered uninhabitable by the difficulty of access and by the smoke, jars, and noises attendant upon the operation of trains, and, as a consequence, said ordinance, if carried into effect, would damage each of the petitioners in the sum of over $2,000; that petitioners protested against the adoption of said ordinance as a manifest and gross oppression and abuse of power; and that said ordinance is null, because it both takes and damages the property of petitioners without compensation, and is ultra vires, and is violative of the city charter, in the following particulars: Here follow eight specifications, among which is the one that the franchise was granted without competition and without consideration, although

worth more than $100,000, and although other parties might have bid for same if the charter requirements for the invitation of sealed proposals and for publication had been complied with. The city and the railroad company are made defendants, and the prayer is that the ordinance be annulled.

Defendants excepted that there is no allegation of privity of interest between the plaintiffs, and that therefore there is a misjoinder of parties plaintiff.

The lower court sustained this exception, and dismissed the suit in so far as it is a joint suit, but reserved to the plaintiffs the right to prosecute it in any one of their separate names. From that judgment the plaintiffs have appealed.

The Code is singularly silent on the subject of joinder of parties. The provision bearing nearest upon the subject is that contained in article 147 et seq., dealing with "Cumulated Actions," where the cumulation of several demands is expressly authorized, provided they are not inconsistent. This, apparently, leaves the door open for several plaintiffs to join their suits against several defendants, regardless of privity or connection between them, so long as the demands are not inconsistent. But no one ever understood that the intention was to sanction anything of that kind, and this court soon had occasion to discountenance such a practice, declaring that it was "at variance with well-settled rules of pleading" [Mayor v. Azmant, 14 La. Ann. 181; Dyas v. Dinkgrave, 15 La. Ann. 502, 77 Am. Dec. 196], and that the "law" did not favor "a multiplicity of actions against different parties in the same suit." Leverich v. Adams, 15 La. Ann. 310. But the court did not say where this "law" and these "well-settled rules of pleading" were to be found.

We look in vain for them in the Spanish and French systems of procedure prevailing at the time of the adoption of our Code of Practice; but we find them in the common-law books, and we know that our Code of Practice was derived largely from that system, while our Criminal Procedure was taken bodily from it. The rules there laid down are safe guides, all the more so because they are not the product of arbitrary legislation, but the gradual result of the application of pure reason to the exigencies of cases in actual practice. The following statement of the law upon this subject, taken from Gaines v. Crew et al., 2 How. 619, 11 L. Ed. 402, a Louisiana case, is as satisfactory as any:

"What shall constitute multifariousness is a matter about which there is a great diversity of opinion. In general terms, a bill is said to be multifarious, which seeks to enforce against different individuals demands which are wholly disconnected. In illustration of this, it is said, if an estate be sold in lots to different persons, the purchasers could not join in exhibiting one bill against the vendor for a specific performance. Nor could the vendor file a bill for specific performance against all the purchasers. The contracts of purchase being distinct, in no way connected with each other, a bill for specific execution, whether filed by the vendor or vendees, must be limited to one contract. It has been decided that an author cannot file a joint bill against several book sellers for selling the same spurious edition of his work, as there is no privity between them; but it has been ruled that a bill may be sustained by the owner of a sole fishery against several persons who claimed under distinct rights. The only difference between these cases would seem to be that the right of fishery was necessarily more limited than that of authorship, and how this should cause any difference of principle between the cases is not easily perceived.

"It is well remarked by Lord Cottenham, in Campbell v. Mackay, 7 Simon, 564, and in 1 Mylne & Craig, 603: 'To lay down any rule applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible.' Every case must be governed by its own circumstances, and, as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should never be subjected to expense and inconvenience, in litigating matters in which they have no interest, multiplicity of suits should be avoided, by uniting in one bill all who have an interest in the principal matter in controversy, though the interest may have arisen under distinct contracts.

"In the course of reasoning in the above cited case, Lord Cottenham observes: 'If, for instance,

a father executed three deeds, all vesting property in the same trustees, and upon similar trusts, for the benefit of his children, although the instruments and the parties beneficially interested under all of them were the same, it would be necessary to have as many suits as there were instruments. That is a proposition,' he says 'to which I do not assent. It would, indeed, be extremely mischievous, if such a rule were established in point of law. No possible advantage could be gained by it; and it would lead to a multiplication of suits, in cases where it could answer no purpose to have the subject-matter of contest split up into a variety of separate bills.' The same doctrine is found in Story's Equity Pleadings, § 534; Attorney General v. Cradock, 3 Mylne & Craig, 85, 7 Sim. 241, 254.

"In the above case against Cradock, the chancellor says: 'The object of the rule against multifariousness is to protect a defendant from unnecessary expense; but it would be a great perversion of that rule, if it were to impose upon the plaintiffs, and all the other defendants, two suits, instead of one.' "

On the same subject we transcribe from 14 E. of P. & P. 195, 200, as follows:

"There is no settled and inflexible rule as to whether or not a pleading is multifarious. The question is one which must be determined largely by the circumstances of each particular case."

"Multifariousness as to parties. The other form of multifariousness, and the one which is said to be more properly such, consists in joining in the same suit, either as complainants or defendants, parties who are without a common interest in the subject of the litigation and have no connection with each other. In order to complain successfully of multifariousness in this form, a defendant must show that he is brought as a defendant upon a record with a large portion of which, and of the case made by which, he has no connection whatever; but a bill is not so multifarious where complainants have a common interest as to the point at issue, though their claims are in a sense distinct."

The general result of the foregoing may be said to be that the avoidance of a multiplicity of suits is always desirable, but that parties are not allowed to join unless they have a common interest as to the point at issue, and that even then the court may exercise a discretion.

In the case at bar, the plaintiffs are suing in three different and distinct qualities: First, in their quality of taxpayers, resisting an alleged illegal disposition of corporate property; secondly, in their quality of property; secondly, in their quality of property owners along the street or so-called "easement of passage," to be occupied by the proposed railroad, resisting an obstruction of the street; thirdly, in their quality of property owners whose property and riparian rights are to be taken or damaged without compensation, vindicating their mere private property rights.

That as taxpayers resisting an illegal disposition of corporate property, and as residents on the same street resisting an obstruction of the street, the plaintiffs have a common interest, is plain. The right of taxpayers to unite in such a case was expressly held by the Supreme Court of Illinois, in Mt. Carbon R. Co. v. Blanchard, 54 Ill. 240; and the right of residents on a street to unite in a suit to prevent an obstruction of the street was expressly held in Herrick v. Cleveland, 7 Ohio Cir. Ct. R. 470; Hart v. Buckner, 54 Fed. 925, 5 C. C. A. 1; and Pettibone v. Hamilton, 40 Wis. 402.

Indeed, while the right of taxpayers to interfere by suit with the action of the authorities of the municipality has been doubted (Handy v. New Orleans, 39 La. Ann. 107, 1 South. 593, and cases there cited; Telle v. School Board, 44 La. Ann. 368, 10 South. 801), the only case that we have come across in which any question has arisen touching their right to unite in any suit they might bring for that purpose is Mt. Carbon R. Co. v. Blanchard, cited supra.

The right of separate property owners to unite in resisting the taking or damaging of their several properties, without compensation, is not so clear; but we can see no objection to their doing so when in the relief which they seek they are, as in this suit, solidary. They are solidary in this suit because the annulment of the ordinance, which is the only thing which they are asking for, will be as effective if decreed at the instance of one as at the instance of all. In addition to this solidarity, there is the singleness of

issue. The issue which the plaintiffs in their quality as property owners along this lake front raise with the defendants is whether there has been or not such a dedication of the space along this lake front to the public that the city may grant a right of passage along there to a railroad without compensation to the proprietors along the proposed line. Certainly the defendants can have no interest in litigating this issue in eight suits, instead of in one.

In Kunkel v. Markell, 26 Md. 390, the Supreme Court of Maryland held that, where the interests of several complainants, though distinct, and on distinct conveyances, are yet of a similar nature, against the same defendants, and in relation to the same subject-matter, and the relief prayed for is the same in character as to all, the objection of multifariousness does not apply. In Gaines v. Chew, supra, the unity, privity, or community resulted from the fact that the plaintiff claimed adversely to the title of the common author of the several defendants. To the same effect, Derbes v. Romero, 28 La. Ann. 644, and Vicksburg, etc., v. Elmore, 46 La. Ann. 1243, 15 South. 701, only that in the latter case the defendants were mere trespassers. In Peters v. Van Lear, 4 Gill (Md.) 249, slaves claiming a right of freedom under the same will were allowed to unite in the same suit to compel the executor to execute the directions of the will. In Brou v. Becnel, 20 La. Ann. 254, the separate holders of the same series of mortgage notes were allowed to unite in one suit to enforce payment. In Atkinson v. Atkinson, 15 La. Ann. 491, a wife was allowed to couple with her suit for separation of property an injunction against the creditors of her husband, who had seized property as belonging to the husband which she claimed to be the owner of. In Theurer v. Schmidt, 10 La. Ann. 296, a husband was permitted to join as defendants in one suit the several holders of notes made by him and confided to his wife, and which his wife had transferred without consideration. In Williams v. Hawthorn, 14 La. Ann. 615, a creditor claiming a mortgage on all the property of his debtor was allowed to unite in one suit an action to set aside a judgment in favor of the wife of the debtor, and an action to set aside a private sale made by the debtor to a third person. In Waldo v. Angomar, 12 La. Ann. 74, the court said that the cumulation of several distinct causes of action against several defendants may be objected to, "unless they have a common interest to be adjudicated upon in one judgment." In Hotard v. T. & P. R. R. Co., 36 La. Ann. 450, the court permitted several market gardeners cultivating separate tracts to unite in one suit to recover damages done to their several tracts of land by the railroad embankment. The last case is cited merely by way of illustration. Other illustrative cases are the following:

"Where a number of insurance companies, affected by a loss, join in submitting the question to arbitration of the amount of damage, and a single award is made, a single bill brought by all the companies as parties plaintiff to set aside the award is not multifarious." Hartford Fire Ins. Co. v. Bonner Mercantile Co. (C. C.) 44 Fed. 151, 11 L. R. A. 623.

"A bill by a railroad company against a large number of persons, to determine the estate claimed by them in land over which the railroad is constructed, is not multifarious because it avers that defendants claim separate and distinct parcels, where all are alike interested in the defeat of complainant's claim of prior right under a grant from the government." Central Pac. R. R. Co. v. Dyer, 1 Sawy. (U. S.) 641, Fed. Cas. No. 2,552.

"A bill by a railroad company, joining as defendants the various counties through which this railroad runs, is not multifarious where the question on which the case turns is common to all, and the counties are agencies of the state as to that part of the taxes which they must pay into the state treasury." Union Pac. R. Co. v. McShane, 3 Dill. (U. S.) 303, Fed. Cas. No. 14,382, affirmed 89 U. S. 444, 22 L. Ed. 747.

"A bill by the Northern Pacific Railroad Company to enjoin the payment of taxes for 1889 on lands granted to it by Act Cong. July 2, 1864, is not multifarious because brought against the tax collectors of 12 different counties for lands within their respective jurisdictions, since

the questions of law and fact involved are common to all the defendants, and the relief prayed is the same." Northern Pac. R. Co. v. Walker (C. C.) 47 Fed. 681.

"A bill by the United States, as trustees of Indians to whom lands have been allotted in severalty, against persons occupying under void leases, to oust such persons, is not multifarious, though defendants hold under leases from different lessors, and have no common interest." United States v. Flournoy Live Stock & Real Estate Co. (C. C.) 69 Fed. 886.

"Several parties owning extensive mines at various points on the affluents of a river work them independently of each other by the hydraulic process, discharging their waste earth and other débris in the stream, whence it flows down into the main river, where the débris becomes mingled into one indistinguishable mass, passes on, and is deposited along the course of the river in the valley below, burying valuable lands, and creating a public and private nuisance. A bill by a party against all the parties thus contributing to the nuisance, to enjoin it, is not demurrable as being multifarious, for a misjoinder of parties defendant." Woodruff v. North Bloomfield Gravel Min. Co. (C. C.) 16 Fed. 25.

Judgment set aside, and exception of misjoinder overruled, and suit remanded to be proceeded with according to law; defendants to pay cost of appeal.