SHAW v. GWIN et al.*

No. 14693.

Court of Appeal of Louisiana. Orleans.

April 23, 1934.

*Rehearing refused May 21, 1934. Writ of certiorari refused July 2, 1934.

P. M. Milner, of New Orleans, for appellant Gwin.

A. D. Danziger, of New Orleans, for appellants Jung.

Howell Carter, Jr., of New Orleans, for appellee.

HIGGINS, Judge.

Arthur M. Shaw, a civil and consulting engineer, brought this suit against Oscar M. Gwin, doing business as O. M. Gwin Construction Company, Peter Jung, Sr., Peter Jung, Jr., and Arthur L. Jung, in solido, to recover the sum of $1,000, alleged to be due as compensation for services rendered to defendants while acting for them in the capacity of an arbitrator. The petition contains the following allegations:

"4. That on or about the 16th day of April, 1928, Oscar M. Gwin, Peter Jung, Sr., Arthur L. Jung and Peter Jung, Jr., agreed in writing to submit to arbitration certain claims of the said Oscar M. Gwin against the said Peter Jung, Sr., Arthur L. Jung and Peter Jung, Jr., growing out of the construction by him of the Jung Hotel Annex, on LaSalle Street, between Canal Street and Cleveland Avenue, in this City, in which your petitioner was selected and appointed arbitrator by the said Jungs, as owners, and Frank J. Coleman was selected and appointed arbitrator by the said Gwin as contractor, all as will be fully shown by the original of said agreement which is attached to the suit entitled and numbered: Peter Jung, Sr. et al. v. O. M. Gwin, doing business as the O. M. Gwin Construction Co., No. 176747 of the docket of the Civil District Court and the same suit No. 31,215 of the docket of the Supreme Court of Louisiana (174 La. 111, 139 So. 774), and herein specially referred to and made part of this petition as fully as though copied herein in extenso.

"5. Your petitioner shows that the above agreement of April 16, 1928, to submit certain claims to arbitration, was entered into by said parties by authority of Article 40 of the Specifications, which was a part of the building contract between said parties (the original Specifications being attached to the aforesaid suit), which article reads as follows:

" 'All questions subject to arbitration under this contract shall be submitted to arbitration at the choice of either party to the dispute.

" 'The contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the owner.

" 'The demand for arbitration shall be filed in writing with the architect, in the case of an appeal from his decision, within ten days of its receipt, and in any other case within a reasonable time after cause thereof, and in no case later than the time for final payment, except as otherwise expressly stipulated in the contract. If the architect fails to make a decision within a reasonable time, an appeal to arbitration may be taken as if his decision had been rendered against the party appealing.

" 'No one shall be nominated or act as an arbitrator who is any way financially interested in this contract or in the business affairs of either the owner, contractor, or architect.

" 'Unless otherwise provided by controlling statutes, the parties may agree upon one ar-

bitrator; otherwise there shall be three, one named in writing by each party to this contract, to the other party and to the architect, and the third chosen by these two arbitrators; or if they fail to select a third within fifteen days then he shall be chosen by the presiding officer of the Bar Association nearest to the location of the work. Should the party demanding arbitration fail to name an arbitrator within ten days of his demand his right to arbitration shall lapse. Should the other party fail to choose an arbitrator within ten days, then such presiding officer shall appoint such arbitrator. Should either party refuse or neglect to supply arbitrators with any papers or information demanded in writing the arbitrators are empowered by both parties to proceed ex parte.

" 'If there be but one arbitrator his decision shall be binding; if three, the decision of any two shall be binding. Such decision shall be a condition precedent to any right of legal action, and wherever permitted by law it may be filed in court to carry it into effect.

" 'The arbitrators, if they deem the case demands it, are authorized to award to the party whose contention is sustained, such sums as they shall deem proper for the time, expense and trouble incident to the appeal, and, if the appeal was taken without reasonable cause, damages for delay. The arbitrators shall fix their own compensation unless otherwise provided by agreement, and shall assess the costs and charges of the arbitration upon either or both parties.

" 'The award of the arbitrators shall be in writing, and it shall not be open to objection on account of the form of the proceedings, or the award, unless otherwise provided by the controlling statutes.

" 'In the event of such statutes providing on any matter covered by this article otherwise than as hereinabove specified, the method of procedure throughout and the legal effect of the award shall be wholly in accordance with the said statutes, it being intended to lay down a principle of action to be followed, leaving its local application to be adapted to the legal requirements of the jurisdiction having authority over the arbitration.'

"6. That, under the authority vested in your petitioner and the said J. Frank Coleman, as arbitrators, selected and appointed as such by the respective parties, as shown by the aforesaid Article 40 of the Specifications, Donald Derickson of this City, was named as umpire; that petitioner attaches hereto and makes part hereof certain correspondence pertaining to the selection of the said Donald

Derickson as umpire, same being marked P-1 for identification herewith.

"7. That in accordance with the agreement to submit to arbitration, the said arbitrators, and the said umpire, took oath on April 20, 1928, and then thereafter proceeded to hear evidence with respect to the claims submitted under the said agreement.

"8. That on August 29, 1928, the arbitrators, together with the umpire, communicated their findings in writing to the said Jungs and the said Gwin, a copy of which communication is annexed hereto and made part hereof, being marked P-2 for identification herewith, but to which findings your petitioner dissented.

"9. That the said Article 40 of the Specifications above quoted, and also referred to in the agreement to submit to arbitration, provides, among other things, the following:

" ' * * * The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the arbitration upon either or both parties.'

"10. Petitioner further shows that, under said above quoted authority and in line with the understanding had with the said Donald Derickson, as disclosed by the aforesaid correspondence marked P-1, the said arbitrators fixed the compensation of each, for their services as arbitrators and umpire, respectively, at $1,000.00.

"11. Petitioner further shows that he actually devoted to the services as arbitrator over ten days' time, the details of which service are set forth in a statement annexed hereto and made part hereof and marked P-3 for identification herewith.

"12. Petitioner further shows that he has fully and completely discharged all of his obligations as arbitrator under his selection and appointment, as aforesaid, in the agreement to submit to arbitration, and that he is entitled to recover from the said defendants, in solido, the sum of $1,000.00 for his services as said arbitrator.

"13. Petitioner further shows that the said Jungs appealed from the award of the said arbitrators, as if fully shown in the aforesaid suit, No. 176,747, of the docket of this Honorable Court, and by judgment rendered on January 16, 1931, and signed on January 24, 1931, the said award made by Frank J. Coleman, Prof. Donald Derickson and Col. A. M. Shaw (with Col. A. M. Shaw dissenting) of date August 29, 1928, was reversed and set aside and defendant ordered to pay costs;

that this judgment was appealed from by the said Gwin to the Honorable Supreme Court of the State of Louisiana under the number 31,215 of the docket of said court, and said judgment affirmed on January 4, 1932, and a rehearing refused on February 1, 1932; that, therefore, the said judgment is now final and petitioner is entitled to recover for his said services as aforesaid.

"14. Your petitioner finally shows that the compensation fixed by the arbitrators, as set forth in Article 10 of this petition, was approved by the said parties; that the said Gwin paid the said amount to the said J. Frank Coleman, the arbitrator appointed and selected by him, and the said Jungs filed a rule in the aforesaid proceedings, No. 176,747 of the docket of this court, on February 15, 1932, to tax the fees of your petitioner and the said Donald Derickson of $1,000.00 each, as a part of the costs in the arbitration.

"Wherefore, petitioner prays that the said Oscar M. Gwin, doing business as O. M. Gwin Construction Company, Peter Jung, Sr., Albert L. Jung, and Peter Jung, Jr., be duly cited to appear and answer this petition, and that, after due proceedings had, there be judgment in favor of petitioner and against the said Oscar M. Gwin, doing business as O. M. Gwin Construction Company, Peter Jung, Sr., Arthur L. Jung, and Peter Jung, Jr., in solido, in the full sum of One Thousand Dollars ($1,000.00), with legal interest thereon from August 29, 1928, until paid, and all costs of suit.

"And for all general and equitable relief, etc."

All of the defendants filed exceptions of no right or cause of action, and the defendant Gwin further excepted on the ground of misjoinder of parties defendant. The trial court overruled the exceptions.

The defendants Peter Jung, Sr., Arthur Jung, and Peter Jung, Jr., answered, reserving the benefit of the exceptions filed, substantially admitting all the allegations of the petition, but denying liability, and averring "that the compensation of the plaintiff is due by co-defendant O. M. Gwin, who was and is the party cast and who owes all costs and expenses of the litigation, as appears from paragraph 13 of plaintiff's petition." They further averred that after the award of the arbitrators had been reversed by the district court and this judgment was affirmed by the Supreme Court, they instituted suit against O. M. Gwin for the return of $16,459.58 paid to him under protest within seven days from the time of the award, in accordance with the agreement of arbitration, and that in division A of the civil district court Judge Cage entered judgment in their favor for that sum and refused a new trial and cast Gwin for the costs of the proceedings.

The defendant Gwin answered, reserving his rights under the exception of no cause of action, and admitting practically all the allegations of the petition, but denying that the arbitrators had fixed their fees in accordance with the arbitration agreement, or that he had agreed to pay the plaintiff's fee, averring he was only obligated to pay the fee of Frank Coleman, engineer, whom he had selected as an arbitrator, and denying that the decrees of the courts, casting him to pay the costs, had any reference to the expenses and costs of the arbitration, but had reference solely and only to assessing the costs of the judicial proceedings against him in the litigation referred to in the petition.

There was judgment in favor of the plaintiff and against Gwin, as prayed for, and dismissing plaintiff's suit as to the other defendants. The defendant Gwin appealed suspensively; later the plaintiff appealed devolutively.

■■ The first argument advanced by the defendant Gwin under the exception of no cause of action is that the plaintiff is attempting to sue upon a written contract when he is not a party thereto. His counsel argues that the agreement was between the Jungs and Gwin and that as the Jungs appointed plaintiff as their arbitrator, they were liable to plaintiff for his services and not Gwin, even though he might eventually be liable to the Jungs for reimbursement under the terms of their agreement.

As we view the agreement between the parties, they mutually and reciprocally conferred upon each other the authority to appoint an arbitrator to determine who was right or wrong in the pending controversy. The selection and appointment of the arbitrator by the respective parties to the contract did not make him the representative, agent, or employee of the party who appointed him, but an arbitrator for all of them. He was to act as such in hearing the respective sides of the argument and to render a written decision in a quasi-judicial way. R. C. C. art. 3099 et seq. Plaintiff's suit is not based upon the theory that he is a party to the contract between the defendants, but upon the ground that the Jungs had the authority and power thereunder to designate him as one of the arbitrators to act for both

parties in the dispute, the contract being referred to for the purpose of proving that fact. In short, Gwin authorized his appointment, leaving his selection to the Jungs. However, even if the plaintiff was suing upon the contract, he would be entitled to do so because the above-mentioned clause in the contract is a stipulation "pour autri." Plaintiff availed himself of the advantage stipulated in his favor by accepting the appointment, performing the duties imposed upon him by the defendants, and thereby earned his fee under their contract. See articles 1890 and 1902, R. C. C., and article 35, Code of Practice.

■■ The exception of no right or cause of action filed by the defendant Gwin is also predicated on the ground that the correspondence annexed to the petition would control the allegations of the petition and that these annexed letters do not show that the arbitrators ever fixed their fees, and, consequently, plaintiff is not entitled to recover the sum until that condition precedent contained in the arbitration agreement has been complied with.

Conceding that the correspondence does not show that the arbitrators ever fixed their fee in accordance with article 40 of the specifications and the agreement of arbitration, nevertheless, in article 14 of the petition it is alleged that the compensation of $1,000 for each of the arbitrators and the umpire, respectively, was "approved by the said parties" (defendants). Surely this allegation in the petition and the other allegations set forth a cause of action, even though the correspondence might not show that the fees were fixed by the arbitrators, because the plaintiff would be entitled to introduce any other relevant and admissible evidence tending to show that the fee of $1,000 claimed by the plaintiffs was fixed by the arbitrators and the umpire and approved by the defendants. The petition, therefore, having alleged a cause of action on one ground, is not to be defeated by an exception of no cause of action. Crescent Cigar & Tobacco Co. v. Mire et al. (La. App.) 145 So. 17.

■ The exception of misjoinder filed by the defendant Gwin is founded upon the theory that while the plaintiff seeks to hold the defendant solidarily liable, it is manifest that either the Jungs or Gwin owed the money and not both of them. Plaintiff questions Gwin's right to have the judgment overruling the exception of misjoinder reviewed here because he did not reserve a bill of exceptions to the trial judge's ruling and did not reserve the benefit of the exceptions in his answer, confining the reservation to the exception of no cause of action. Conceding that the defendant Gwin did not abandon the exception of misjoinder and that he has a right to have us pass upon it, a view most favorable to him, let us examine the merits of the contention he makes.

In the case of Reardon v. Dickinson, 156 La. 556, 100 So. 715, the court held that the test, in considering an exception of misjoinder of parties-plaintiff or defendant, is whether the parties, either plaintiffs or defendants, have a common interest in the subject-matter of the suit. In Morgan's L. & T. R. R. & S. S. Co. v. Godchaux Sugars, Inc., et al., 3 La. App. 236, it was said that the above rule is applicable even though there may be some distinction in plaintiff's claim against either of the defendants. In Gill v. City of Lake Charles, 119 La. 17, 43 So. 897, we find: "Our Code of Practice makes no provision for determining when parties may or may not be joined either as plaintiffs or defendants. We have to be guided in that regard by the well-settled rules of pleading as found in the books of common law, according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest, or where the defendants would be embarrassed in their defense, or delays would be caused, or complications arise, in connection with costs, or otherwise." Syllabus.

In the same case the court, in discussing the subject, quoted from Gaines v. Chew et al., 2 How. 619, 11 L. Ed. 402, a Louisiana case, as follows:

"It is well remarked by Lord Cottenham, in Campbell v. Mackay, 7 Simon, 564, and in 1 Mylne & Craig, 603: 'To lay down any rule applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible.' Every case must be governed by its own circumstances, and, as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should never be subjected to expense and inconvenience, in litigating matters in which they have no interest, multiplicity of suits should be avoided, by uniting in one bill all who have an interest in the principal matter in controversy, though the interest may have arisen under distinct contracts. * * *

"In the above case against Cradock, the chancellor says: 'The object of the rule

against multifariousness is to protect a defendant from unnecessary expense; but it would be a great perversion of that rule, if it were to impose upon the plaintiffs, and all the other defendants, two suits, instead of one.'"

See, also, Courtney v. Ry. Co., 131 La. 575, 59 So. 994.

In the instant case there are not separate and conflicting demands against the two defendants. The object and purpose of the suit is one and the same thing, the recovery of the fee claimed by the plaintiff for services rendered to both defendants in his capacity as an arbitrator.

From the above authorities it is quite clear that the trial court had the right, or at least the discretion, to overrule the exception, and that he properly did so, because the case grew out of the same transaction involving the same parties and none of defendants were jeopardized in presenting their defenses, and the ruling had the effect of preventing unnecessary litigation.

The exception of no right or cause of action filed by the other defendants, i. e., the Jungs, is based upon the theory that, as the award of the arbitrators was reversed on appeal by both the district and Supreme Courts, which assessed the cost of the proceedings against the defendant Gwin, that the claim of plaintiff for his fee was included therein, and, consequently, they were not liable therefor. Since this issue is also raised by the defendants in their respective answers, we shall dispose of it in connection with our discussion on the merits, in order to avoid repetition.

### On the Merits.

The plaintiff offered in evidence the petition, the answers, the document that was annexed to the petition, and the two records of the civil district court and the record of the Supreme Court referred to in his petition and rested. Counsel for Gwin objected on the ground that these records were irrelevant, reaffirming the reasons for the exception of no cause of action.

The Jungs introduced in evidence the record of the proceedings of the civil district court in division A, where they obtained judgment condemning Gwin to return to them the money paid under protest, in accordance with the award of the arbitrators, and also the records of the civil district court and the Supreme Court offered by the plaintiff. Their counsel dictated an admission in to the record that they had appointed plaintiff as an arbitrator in accordance with the authority vested in them under the provisions of the agreement with Gwin that they had approved the fees of $1,000 each for the arbitrators and the umpire, as fixed by them. Counsel for respondent Gwin objected to the offer made by the Jungs on the ground that there was no counterclaim by the Jungs against Gwin and, in so far as the evidence and admission were offered in an attempt to show liability on the part of Gwin to the plaintiff, reiterated the previous objections made to the offer by the plaintiff.

The letters introduced in evidence show very clearly that the umpire, Dr. Derickson, was employed on the basis of $100 a day and expenses. The arbitration took ten days and, consequently, his fee amounted to $1,000. The Jungs admit that the arbitrators fixed their fees on the same basis and that they earned them and were entitled to be paid, but assert that defendant Gwin was liable for the fees of the arbitrators and the umpire, having lost the case and being assessed with the expenses and costs of the whole matter.

The defendant Gwin, in his answer, admits that he paid the arbitrator whom he selected, J. Frank Coleman, the amount of his agreed compensation. His counsel, on the trial of the case on the merits, dictated into the record the following statement: "If you will admit that you employed him (Shaw) under the contract as your arbitrator, in that case that is all I want. I do not want any hedging. Do you admit that you employed him just as we did Coleman and we paid him $1,000."

To which statement counsel for the Jungs replied: "On behalf of the defendant, Jung, et al. we admit that Shaw was appointed by us under the terms of the arbitration agreement."

While it appears that the arbitrators and the umpire fixed their fees in an informal way, nevertheless they fixed their fees, and, as the agreement of arbitration does not specify that any particular method of doing so shall have to be followed, we believe it was a substantial compliance with the terms of the agreement. This is particularly true in view of the fact that the defendants approved of the fee of $1,000 each for the arbitrators in the manner which we above recite. There is no dispute that the arbitrators rendered the services which they were required to perform under the terms of the agreement and that they earned their fees. It is not disputed that the sum of $1,000 for each of them is reasonable.

■ We have devoted much thought to the contention that, because the judgment annulling the award of the arbitrators did not specifically refer to the costs of the arbitration, there is no basis, at this time, for a judgment condemning either party to pay those costs.

We direct attention to the possible and suggested distinction between the usual and ordinary court costs which attended the litigation in court and the stenographer's charges and arbitrators' fees which were made necessary by the arbitration.

It must be borne in mind that in the agreement under which the arbitration was held it was stipulated that the arbitrators should be empowered to decide not only the principal controverted issue, but also to determine how the costs of the arbitration should be assessed. It was not provided in that agreement that the unsuccessful party should pay all costs, but that the arbitrators should, in their discretion, determine whether one party should bear the whole expense, or whether that expense should be apportioned in any other manner.

When the court set aside the award of the arbitrators on the principal issue, it also set it aside in regard to the apportionment of costs. See Jung v. Gwin, 174 La. 111, 139 So. 774. We have reached the conclusion that, under the terms of the agreement to arbitrate and because of the form of that agreement, under the law of the state of Louisiana, there was a right in either party to appeal from the award of the arbitrators to the courts. R. C. C. art. 3130; C. P. art. 460; Jung v. Gwin, supra. That right of appeal to the courts included the right to complain of that part of the award which fixed the costs of arbitration, as well as that part which determined the principal issue.

We therefore conclude that the district court had jurisdiction to decide both issues and that there could be no question that, had the court, in the judgment which it rendered, specifically referred to the costs of arbitration, and assessed those costs, the arbitrators, who had not been paid, could have compelled the party condemned to comply with that judgment and to pay their fees.

But it is contended that the court did not do that and that, in fact, it failed to render, with reference to the costs of arbitration, any judgment which could be said to have replaced the award of the arbitrators, so far as those costs of arbitration are concerned.

■ The judgment which set aside the award in toto contained a paragraph reading as follows: It is further ordered, adjudged and decreed that the defendant pay all costs."

But it is argued that the words "all costs" included not the costs of arbitration, but only the costs of litigation after it reached the courts.

Since, under the laws of this state, it is contemplated that, where the parties agree, in the form adopted here, to arbitrate their differences, the arbitration shall be deemed only as a preliminary step in the litigation, it follows that, if either party is dissatisfied with the award of the arbitrators, he may appeal to the courts, and the conclusion is inescapable that, where such litigation does find its way into court and a judgment is rendered and in that judgment one of the parties is condemned to pay "all costs," the costs of the preliminary step, to wit, the arbitration, are intended to be included in those words. Since the agreement contemplated the payment of fees to the arbitrators, it also follows that, in such a situation as this, a judgment condemning one of the parties to pay "all costs" would ordinarly be interpreted as condemning that party to pay the costs of arbitration. In this instance, however, it appears that when, on appeal, the judgment had been affirmed and the decree had become final, the Jungs sought by rule to tax as costs certain expenses of the arbitration, including the fee of Mr. Shaw, who is plaintiff here, and that the district judge dismissed that rule, maintaining the contention of Mr. Gwin, the defendant here, that the claim should be presented not by rule to tax costs, but by a separate and direct action. It might thus appear that the district judge, who had rendered the original judgment and who therein had used the words "all costs," had interpreted those words as not including the fees of the arbitrators and of the umpire, and since there was no appeal from that judgment refusing to tax the said fees as costs, it is now suggested that that judgment has acquired the force of the thing adjudged and that Mr. Shaw's suit should be dismissed under a plea of res adjudicata. However, Mr. Shaw was not a party to the rule to tax costs. It was brought by the Jungs and Mr. Shaw filed no appearance therein. In fact, when the rule to tax costs was filed by the Jungs and was at first made absolute, Mr. Gwin, defendant here, in a document which appears to be an application for a new trial of that rule, contended "that said amounts, (the fees of the arbitrators and of the stenographer) if due at all, are not due to Peter

Jung, Sr., et al., but due to the arbitrators and the stenographer direct."

It thus appears by the pleadings of Mr. Gwin that Mr. Shaw was no party to that rule to tax costs. Therefore he is not bound thereby, and as to him that judgment does not constitute res adjudicata. When, in Shaw's direct action, the district judge, in considering the matter, reached the conclusion that the fee should be paid by defendant, it is evident that the said judge interpreted his own original judgment as fixing the costs of the arbitration and as condemning defendant to pay the fee to Mr. Shaw.

■ There is, as we have said, no doubt of the right of the court to set aside the entire award of the arbitrators and to substitute therefor a judgment of court in the matter of costs of arbitration, as well as on the main issue, and, since the said district court has interpreted its own judgment as having done that, we feel that the construction placed by the district judge on his own words should be accepted as the correct interpretation.

It follows from what we have said that the legal position of the defendants, the Jungs, based upon both their exception of no cause of action and answer, was well founded and properly upheld by the dismissal of the suit, as to them and awarding the plaintiff judgment against the defendant Gwin alone.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.

WESTERFIELD, Judge (dissenting).

The building contract between the Jungs and the Gwin Construction Company contained a clause which provided for arbitration in the event of a dispute arising during the construction of the building and also provided that the cost of arbitration be fixed as the arbitrators saw fit. A dispute arose and arbitration was had, the costs of the arbitration being proportioned on a basis of two-thirds upon the Jungs and one-third upon Gwin. The Jungs appealed to the courts as the law and their contract permitted, with the result that the findings of the arbitrators upon the issue between the owners and the contractor was set aside. In the language of the court "reversing, setting aside, annulling, and vacating" the award of the arbitrators, Jung v. Gwin, 174 La. 111, 123, 139 So. 774, 776.

Nothing was said by the district judge or by the Supreme Court upon the question of the costs of arbitration, and when it was later sought to have the same district court, which had rendered the judgment, assess the costs of arbitration as part of the costs of the suit it declined to do so, obviously for the reason that they could not properly be regarded as costs of the litigation, and I think that this holding by the court was correct. The contractual obligation of the Gwin Construction Company was, so far as the costs of arbitration were concerned, to pay such part thereof as the arbitrators might deem proper to assess upon it. Their finding in this regard was set aside by the final arbitrators, the Supreme Court of Louisiana, without determining how the costs should be borne. It is conceivable that if the question of the costs of arbitration had been considered by the court it might have put the entire cost upon the owner of the building or have proportioned it in some way considered equitable. However, the matter was never the subject of judicial consideration and the contingency under which the Gwin Construction Company contracted to be liable for the costs, to wit, their assessment by the original arbitrators or by their successors, the courts, has not been realized. I cannot agree that in determining the issue presented by the main question before the arbitrators adversely to the Gwin Construction Company at its cost, that the word "cost" includes anything more than the costs of the litigation, and I am in accord with the position first taken by the learned district judge in discharging the rule to tax the fees of the arbitrators.

I, therefore, respectfully dissent.