(48 South. 440.)
No. 17,202.
GILL et al. v. CITY OF LAKE CHARLES et al.
(Jan. 4, 1909. Rehearing Denied Feb. 15, 1909.)

MUNICIPAL CORPORATIONS (§ 683*) — RAILROADS (§ 75*)—STREETS—GRANTING OF FRANCHISES IN—CHARTER PROVISIONS.

Where the charter of a city, after vesting in the city council the power to grant street franchises to railroads, street railways, telegraph, telephone, and other corporations, provided that every application for a franchise should be published for three days, and competitive bids invited by proclamation of the mayor, and that if the franchise was granted it should be awarded to the highest responsible bidder for the amount of his bid, and on such terms and conditions as might be agreed upon, including the annual payment of 2½ per cent. of the gross income derived by the grantee from the franchise, *held*, that the prescribed manner for the exercise of the municipal power to grant street franchises was mandatory and exclusive of all other methods, and that this implied prohibition applied to all railroads seeking street franchises for any purpose whatever.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1471–1476; Dec. Dig. § 683;* Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by H. C. Gill and others against the City of Lake Charles and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Edwin Franklin Gayle, City Atty., for appellant City of Lake Charles. Hudson, Potts & Bernstein, for appellant St. Louis, W. & G. Ry. Co. Schwing & Moore, for appellees.

LAND, J. This suit was heretofore dismissed on an exception of misjoinder of parties, and plaintiffs appealed. The judgment was reversed, and the cause remanded for trial on the merits. See Gill et al. v. City of Lake Charles et al., 119 La. 17, 43 South. 897.

The city of Lake Charles by ordinance granted to the St. Louis, Watkins & Gulf Railway a franchise to construct and operate a steam railroad on Front street, so called, from Clarence street to Broad street. Plaintiffs as taxpayers, and as property holders along Front street, and as the owners of the land used as a highway, commonly called Front or Lake street, along the shore of Lake Charles, sued to annul said ordinance

as ultra vires and violative of the city charter, and on the further ground that the so-called Front street has never been dedicated or expropriated as a public highway, but at most it is a mere easement permitted by the owners for passage on foot and in ordinary vehicles. The petition also urges the further objection that said ordinance is null because it both takes and damages the property of the plaintiffs without just compensation first paid as required by the state Constitution. The railroad was constructed on Front street after the institution of the suit, and plaintiffs amended and supplemented their original petition by setting forth the facts and praying that the tracks be removed at the expense of the railroad.

The defendant railroad answered, setting forth the ordinance granting to it the right to construct and operate a railroad along the lake front from Clarence and Front street to Broad street; the construction and operation of its tracks at great expense in said street, in compliance with the terms of the ordinance; and that Front street, on which said track is located, is a public street of the city of Lake Charles. The answer avers the legality of said ordinance, that the grant in question was based on a valuable consideration, and that the railroad has performed all the obligations imposed upon it by the terms of the ordinance at great cost and expense, amounting to many thousand dollars, and abandoned valuable rights and privileges on Broad street granted by previous ordinances.

The city of Lake Charles answered, adopting all the defenses set up by the defendant railroad company, and pleaded estoppel against plaintiffs denying the public character of the street located on the banks of Lake Charles, a navigable waterway. The city further averred that its council had, in making the grant, acted in good faith and within its power under the Constitution and laws of the state and the charter of the city.

On the final trial below, judgment was rendered in favor of the plaintiffs, annulling and avoiding the ordinance in question, and ordering the defendant railroad company to remove its rails and cross-ties from said premises at its own expense, and leaving the premises in as good condition as it formerly was within six months from the finality of the judgment.

Defendants have appealed. Plaintiffs have answered the appeal, and prayed that the judgment be amended by shortening the time for the removal of the rails and track of the defendant company, and—

"by reserving plaintiffs' right to sue for damages actually incurred and to occur in separate suits, reserving said claim for past damages free from prescription pending this suit."

The first question, both in importance and logical order, is whether the enactment of the ordinance in dispute was within the legislative powers conferred by law on the council of the city of Lake Charles.

Section 5 of the charter of the city of Lake Charles enumerates the powers conferred on the city council. We excerpt the following paragraphs as germane to the proposition under consideration:

"Sixth. To regulate parks, public grounds, depots, depot grounds, and places for the storage of freight and goods within the corporate limits, and to provide for and regulate the construction and passage of railroads and street railways through the streets, avenues, alleys, lanes and public grounds of the municipality; but no person, persons, company or corporation to whom the right and privilege shall at any time be granted by the authorities of the city to construct railroads and street railways through the municipality, shall have the exclusive right and privilege to do so.

"Seventh. To grant the right for the erection of telegraph, electric light and telephone poles, posts and wires along and upon any of the streets, alleys and ways of the municipality, and to change, modify and regulate the same, and to compel the laying of all such wires underground, but no such right or privilege shall be exclusive."

Under the head of "Future Franchises, Regulating Conveyance of," section 23 reads in part as follows:

"No franchise shall ever be granted by the city council merely for consideration of public

utility or advantage, nor for merely pecuniary consideration, nor merely for both considerations. Every application to the city council for a franchise shall be in writing, shall contain all the terms, conditions and specifications proposed to be complied with by the applicant thereof, and shall be signed by the applicant therefor to whom or to which such franchise is sought to be conveyed."

This section further provides for the publication of such application for not less than 30 days, together with a proclamation from the mayor inviting sealed proposals for the conveyance of such franchises; that the applicant for such franchise shall submit a sealed proposal therefor; that all sealed proposals shall be opened and read at a regular meeting of the council; that, if the council should determine to grant such franchise to any of the bidders or applicants, it shall be granted to the highest responsible bidder therefor on such terms and conditions, in addition to the amount of the successful bid, as may be agreed upon by the council and the bidder; but one of the essential conditions of the granting of such franchise shall be the annual payment to the city council by the grantee, during the duration of the franchise—

"of a sum of money equivalent to not less than two and one-half (2½) per cent. of the amount of the annual gross income of such grantee, and of such grantee's heirs, assigns, successors and legal representatives from or on account of such franchise."

It is admitted that the defendant railroad company did not acquire its franchise in the mode pointed out in section 23 of the charter, but acquired the same by direct grant from the city council without publication or competition, and on terms different from those prescribed by said section.

It is, however, contended by defendants that section 23 has no application to a right of way granted to a railroad common carrier passing through the city, or to its terminal tracks therein, whose earnings come from hauling passengers and freight to and through the municipality. It is argued that for such rights of way there could, in the nature of things, be but one bidder; that the gross annual income from such a franchise cannot be estimated; and that in the instant case the franchise granted was one which produces no revenue, and was purely a matter of convenience for the carrier and the wholesale trade at Lake Charles.

Section 23 makes no exceptions, and emphatically declares that no franchise shall be granted by the city council merely for consideration of public utility and advantage, and provides that every application for a franchise shall be published and competitive bids invited, and that such franchise, if granted at all, shall be awarded to the highest responsible bidder. If this section does not apply to railroads, it also does not apply to telegraph, telephone, pipe line, and other companies doing business beyond the limits of the city and using its streets and public places as links in their right of way. This construction would restrict the operation of section 23 to persons and corporations doing business wholly within the limits of the city of Lake Charles.

Section 5, par. 6, in express terms refers to the construction of railroads and street railways "through the municipality"—the very term "railroad" as thus used indicates the common carrier of passengers and freight.

The charter provisions place all street franchises on the same plane of equality. The power to grant such franchises is subject to the same limitations, and a special mode is provided for the exercise of such power. The requirements of section 23 are mandatory, and must be duly observed under penalty of nullity. McQuillin, Municipal Corporations, 574; 28 Cyc. 877, 878.

"If the statute conferring a municipal power prescribes the manner in which it shall be exercised, this is generally mandatory and exclusive of other methods; * * * and this rule is especially applicable where there are negative

words in effect prohibiting the doing of the thing unless it is done in the manner prescribed." 28 Cyc. 275.

Section 23 starts out with a prohibition, and then declares that every application for a franchise shall be advertised, that competitive proposals shall be invited, and that the franchise shall be awarded to the highest responsible bidder. The object of these requirements is to obtain for the municipality the highest possible price for any franchise that may be petitioned for by any applicant. The only discretion left to the council is to reject any and all bids, and in case of an award to agree upon terms and conditions. The essential condition that the grantee shall pay annually 2½ per cent. of the gross income derived from the exercise of the franchise is mandatory, and must be incorporated in every grant. If, in point of fact, no income should ever be derived from the franchise, the grantee would have nothing to pay on that score. To hold, however, that the city council may predetermine that a certain franchise will never yield any income or revenues, and on this assumption may grant such franchise at their discretion, would vest in that body the power to nullify all the requirements of section 23.

Defendants' counsel have in their brief cited no authorities in support of their proposition that the ordinance in question was a legitimate exercise of the police power of the city council. In plaintiffs' brief it is stated that in the court below defendants' counsel relied upon the cases of East L. R. R. v. City of New Orleans, 46 La. Ann. 526, 15 South. 157, and N. O. & City R. R. Co. v. Watkins, 48 La. Ann. 1550, 21 South. 199. In the first case, the decision was based on section 4, p. 193, Act 135, Laws 1888, providing that the city council of the city of New Orleans shall have no power "to sell or dispose of any street railroad franchises," except after publication and adjudication to the highest bidder, the court holding that

the section did not apply to railroads transporting mails, passengers, and freight long distances beyond the limits of the city. In the second case, the court construed the words "street railroad" as including any local railroad seeking a franchise or privilege which was valuable. In the case at bar there can be no doubt, as both railroads and street railways are specifically enumerated in the grant of powers to the city council, that the first term includes all railroads performing the duties of common carriers. Terminal facilities in cities are indispensable to railroads for the speedy and economical handling of freight in car load lots, and are, in many instances, of enormous pecuniary value. The privilege of using for 20 years the lake front of the city of Lake Charles for the transportation of freight is an additional franchise or privilege which the defendant railroad is seeking to acquire. This franchise must be of considerable value, as it is alleged that the defendant railroad has expended thousands of dollars for the privilege in dispute. But as we construe the charter, the value or extent of the franchise has nothing to do with the question, as every franchise must be let in the manner provided in section 23 of the charter.

This conclusion compels us to avoid the ordinance as ultra vires. The judge below assigned no special reasons for his decree. It is admitted by counsel that the judge in his oral reasons stated that his decree was based on the finding that Front street, or a greater part of the same, was not a public highway. Our conclusion that the ordinance is void renders it unnecessary to pass upon the question whether Front or Lake street (so called) is a locus publicus in whole or in part.

We cannot amend the judgment as prayed for, because plaintiffs' claims for damages were reserved, and therefore were not affected by the decree; because the question of

the suspension of prescription quoad such claims during the pendency of this suit is not at issue; and because the prayer for the shortening of the time allowed for the removal of the railroad track is too indefinite to warrant an amendment of the decree in that particular.

It is therefore ordered that the judgment appealed from be affirmed, and that the defendants pay the costs of appeal.