JONES et ux. v. VERNON PARISH SCHOOL BOARD.

No. 1469.

Court of Appeal of Louisiana. First Circuit.
May 14, 1935.

Olin D. Moore, of Many, for appellants.

A. B. Cavanaugh, Dist. Atty., of Leesville, for appellee.

LE BLANC, Judge.

The petition in this suit is styled as that of "Andrew L. Jones and Mrs. Andrew L. Jones, both residents of Vernon Parish, etc.," but it otherwise contains nothing regarding the status or relation, if any, that exists between them. They have joined their causes of action against the Vernon parish school board to recover four months' salary each, on a contract which each alleges he and she had, respectively, with the said board, to teach in the Pitkin High School in Vernon parish. They aver that they were employed to teach by the month, Mr. Jones' salary being $171 and that of Mrs. Jones, $85. They allege that they began teaching on September 18, 1933,

and taught in their respective positions until February 5, 1934, on which day the member of the school board of the ward in which the Pitkin High School is situated sent two teachers to take their places. They aver that they have never been discharged and have been at all times ready and willing to carry out their contract for the session of 1933–34 and so advised the parish superintendent of public schools and the president of the parish school board.

The defendant first filed an exception of misjoinder of parties plaintiff, contending that as the suit comprises two separate and distinct causes of action, arising under two separate and distinct contracts, it cannot be compelled to defend them both in one proceeding unless there is a community of interest between the plaintiffs.

In the leading case on the subject, Gill et al. v. City of Lake Charles et al., 119 La. 17, 43 So. 897, the Supreme Court made it very plain that our Code of Practice is silent on the subject as to whether two or more parties may or may not join together in one action against the same defendant, and it was there held that, in the absence of any provisions regulating the matter, we had to be guided in that regard by the common-law rules of pleading, "according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest [as to the point at issue], or where the defendants would be embarrassed in their defense, or delays would be caused, or complications arise, in connection with costs, or otherwise." Several cases are cited as illustrative of what had been held to constitute common interest between parties bringing a joint suit, and we think it can safely be said that not one of them showed an interest more in common than that between the plaintiffs in the present proceeding as to the point at issue. We could apprehend nothing from a reading of the petition that would in any way have embarrassed the defendant in resisting the demands or brought about any complications whatever.

In Corpus Juris, vol. 47, title, Parties, at page 53, § 108, reference is made to the rule which prevails in Louisiana, and it is stated that here "the test to be applied is whether plaintiffs have a common interest in the subject matter of the suit, the matter of permitting the joinder resting within the sound discretion of the trial court." Among the cases cited are those of Reardon v. Dickinson,

156 La. 556, 100 So. 715, and Gill v. City of Lake Charles, supra. In the case before us, there was certainly no abuse of discretion on the part of the trial judge in overruling the exception of misjoinder, and we therefore maintain his ruling.

Defendant also filed an exception of no cause of action under which the following contentions are urged:

1. That plaintiffs do not allege that they had a written contract with the defendant in accordance with section 49 of Act No. 100 of 1922.

2. That they did not allege that they were qualified and held a certificate as required by that act.

3. That, assuming that Mrs. Andrew L. Jones is the wife of Andrew L. Jones, what salary she was entitled to, if any, was a community asset which only the husband, as head and master of that community, could sue to recover.

4. That they did not allege that at the time their contracts were entered into, or subsequent thereto, the school board had sufficient funds with which to pay their salaries for 8½ months instead of 4½ months.

■ The first ground on which the exception is based presents the very same question as was considered under a similar exception in the case of Cupit v. Vernon Parish School Board, 145 So. 391, decided by this court in January, 1933, and we there held that the provisions of Act No. 100 of 1922 requiring a written contract by the teacher, and same to be signed by the superintendent, related only to those contracts that were entered into for the scholastic year and not to monthly contracts. In support of that ruling we referred to sections 20, 23, and 49 of the act. We think that the ruling was proper, and we again apply it in this case.

■■ On the second point made under the exception, we have to take into consideration the allegations of the plaintiffs that they each taught school for 4½ months under the contract they had with the defendant. For the purpose of passing on this exception, that allegation has to be taken as true, and if it is, the issue cannot be raised by way of exception. If it has any merit, it may be presented in defense to the action.

■■ The third ground on which the exception is based presents the most serious contention of the defendant in so far as the claim of Mrs. Andrew L. Jones is concerned. In view of the failure of the petition to disclose what the real relation is between the parties plaintiff, however, and, being without further information on the subject in considering the question on the exception alone, we think the proper procedure is to refer it to the merits and determine it according to what testimony may appear in the record, if any. The fourth proposition advanced under the exception is, in our opinion, a matter of defense, and should also be considered on the merits of the case.

For answer to the merits, the defendant in effect admitted the contract of employment as set out in the petition of the plaintiff, and that they taught under their said employment for a period of 4½ months, but it is averred that by the terms of the contract that was the full period for which they were so employed, and that they had knowledge of that fact. Defendant avers further that on February 1, 1934, the schools of Vernon parish were ordered closed by virtue of a resolution adopted at the beginning of the school term in September, 1933, to the effect that the schools would be closed at the end of 4½ months. That its action in ordering the schools closed as of that date was due to the lack of necessary funds with which to pay the teachers, but it is averred further that on the same date, that is February 1, 1934, the Emergency Relief Administration of the United States government agreed to supply the school board with further funds with which to operate the schools on the condition that all employees of the school board would have to qualify and be certified according to the rules and regulations of the said Emergency Relief Administration. It is further averred that these plaintiffs could not certify under those rules and that, when they were so informed, they voluntarily abandoned and vacated the positions they held under their former contract and surrendered the same to teachers who could qualify and be certified by the Emergency Relief Administration.

On the issues thus made up, the case was tried, and resulted in a judgment in favor of the defendants, rejecting the plaintiffs' demand at their costs.

■■ It developed early during the trial that the plaintiffs were husband and wife, and it is not shown that they are separate in property nor separated by judgment in court. The presumption is that the community of acquêts and gains exists between them, and there is nothing whatever to rebut such presumption. That being so, the presumption is also that salaries paid to each becomes the property of the community, with the administration of which the husband is charged.

Whatever claim, therefore, Mrs. Jones may have against the defendant is a claim of the community, and her husband, not she, is the proper party to prosecute the same. ' Succession of Howell, 177 La. 276, 148 So. 48; Breland et al. v. Great States Ins. Co. (La. App.) 150 So. 313; Robinson et al. v. Phœnix Assur. Co., Ltd. (La. App.) 150 So. 317. Had this information relative to the marital status between the plaintiffs appeared at the submission of the exception of no cause of action urged on this ground, the question might have been disposed of on the exception. It having come to our knowledge in the manner presented, it is necessary for us to consider it on the merits, and dispose of it at this time, and, as it is clear that Mrs. Jones is not the proper party to stand in judgment, her claim will necessarily have to be rejected and her demand dismissed as in case of nonsuit.

■ The defendant having admitted the contract of employment and execution of the same for the full term of 4½ months, it is our opinion that it is now estopped from raising all other questions and matters presented under the exception of no cause of action.

We think it can safely be said that when in September, 1933, the defendant board contracted with the school teachers who were to teach in Vernon parish for that term, that the contracts did not contemplate a longer period of employment than 4½ months, although the resolution of September 7, 1933, which fixed the school term contained this significant qualifying phrase: "That unless unforeseen finances become available," the schools were to operate for only 4½ months in 1933–34. It is very probable also that the plaintiff Jones accepted his employment with that understanding. However, a rather unusual situation developed due to the assistance which the school board received from the Emergency Relief Administration at the end of the 4½ months' period. Undoubtedly, the board had taken steps to try to secure the necessary funds from the Emergency Relief Administration prior to the end of the 4½ months' period on February 1, 1934. There is testimony in the way of telegrams and letters dating as far back as January 2, 1934, to show that the board was in communication even then with the Emergency Relief Administration, endeavoring to ascertain if financial aid could be expected. As early as January 18, 1934, it appears from a letter written by the parish director of relief under the Emergency Relief Administration that the teachers had all been interviewed and a list made of those who were qualified and those who were not.

Certainly, on February 1, 1934, the school board knew that the funds would be available, for on that date we find the school board adopting a resolution to the effect that the schools be reopened on Monday, February 5, 1934, "under the rules set forth by the Emergency Relief Administration." It strikes us as rather strange, therefore, that on the very same day, just before adopting this resolution, the board should have passed a resolution declaring the schools closed at the end of 4½ months.

■ On February 5, 1934, which was the Monday following the meeting at which the board had passed the foregoing resolutions, there was another teacher sent to the Pitkin High School to take the place of Mr. and Mrs. Jones. Mr. Jones had learned on the preceding Friday that he had not been certified under the rules and regulations of the Emergency Relief Administration, so he immediately went to consult the school board member of the ward and it was this member of the board who told him that on Monday there would be a teacher to replace him. He did not submit to this in any way, but from there went to see the parish superintendent, and, not being able to obtain any satisfaction from him, went to New Orleans to see Mr. Harry J. Early, the state director of relief under the Emergency Relief Administration, and to Baton Rouge, to see Mr. Thomas H. Harris, the state superintendent of education. He had a favorable interview with the latter, who wrote a strong letter in his behalf to the parish superintendent of education. The letter did not produce the result which he desired, however, and he then found it necessary to resort to a court proceeding to try to maintain himself in his position as teacher. In this, apparently, he was unsuccessful, and, as he says it then appeared that the matter was reaching the point where it was creating a great disturbance in the community, he desisted from any further efforts and decided then that he would institute a proceeding to recover the salary of which he thought he had been unjustly deprived. All of this certainly indicates that Mr. Jones did anything else but abandon his position as teacher in the Pitkin High School, and we are of the opinion that the defense raised on this point has no merit.

■ Now, had the defendant board at the end of the 4½ months' period formally and officially notified all of the teachers of the parish that their contracts as entered into in September, 1933, were terminated, and then reappointed them for the balance of the

school session, it may be that the plaintiff would have no cause for complaint. But all that the school board did was to adopt a resolution declaring the schools closed and immediately thereafter adopt another resolution under which they were declared reopened. The first resolution seems to us to have been a useless formality, as on that day the board was bound to have knowledge that more finances had become available, otherwise the schools would not have been reopened. Even then, all of the other school teachers in the parish seemed to have continued teaching in their same positions as before, except the plaintiff and his wife, regardless as to whether they were qualified and had been certified under the rules and regulations of the Emergency Relief Administration. The testimony shows that quite a good number of them had not been certified, and why there should have been any discrimination made in the case of Mr. and Mrs. Jones does not appear in the record, except for the contention that they had abandoned their positions. This, of course, we have shown was not the case. Another explanation seems to be that those teachers who were not certified and who were retained were acting as substitute teachers. However, they continued to teach in the same positions they were teaching before, and it can hardly be said that they were substituting for themselves.

On March 8, 1934, the board for the first time took official action with regard to all teachers who had not been certified by the Emergency Relief Administration, and on that day adopted a resolution removing them effective as of Monday, March 26, 1934. But as far as the plaintiff is concerned, and as far as this record discloses, he never received any notification whatever even of that official action of the board. Under our decision in the case of Cupit v. Vernon Parish School Board, supra, it was held that a school teacher employed by the month was entitled to a reasonable notice of the action of the board which rescinded its former action under which he was employed. If we were correct in that ruling, we know of no reason why it should not be applied in this case, where there was no notification whatsoever.

Under our view of the case, Mr. Jones has a just claim against the defendant, and we think he is entitled to recover for the four months' salary demanded by him, as it is shown that the schools remained open until the latter part of May, 1934.

For the foregoing reasons, it is ordered, adjudged, and decreed that the judgment appealed from be reversed in so far as it rejected the demand of the plaintiff Andrew L. Jones, and it is now ordered that there be judgment herein in his favor and against the defendant Vernon parish school board in the full and entire sum of $684, with legal interest thereon from judicial demand until paid, and it is further ordered that the said judgment in so far as it rejects the demand of Mrs. Andrew L. Jones be and the same is hereby amended by dismissing her demand as in case of nonsuit.

It is ordered that the defendant pay all costs.