The only question that has to be decided on this appeal is whether or not the trial judge properly rejected the demands of one of the plaintiffs for personal injuries and other items of damage arising out of a collision between the automobile which she was driving and a truck belonging to one of the defendants in the suit, Huff Truck Line, Inc. The other defendant is the liability insurance carrier, Protective Indemnity Company of New York City.
The collision took place in the afternoon of February 5, 1946, when the plaintiff Myrtle Martin, wife of Hiram Martin, was returning to her home in Donaldsonville from a visit, with some school children, to a dentist's office in Napoleonville. Her husband joined her as plaintiff seeking to recover the sum of $150 for damages to his automobile.
The trial judge held the driver of the defendant truck guilty of gross negligence and awarded the husband the $150 which he had claimed. However he held that the plaintiff, Myrtle Martin, had not proven any of the damages she claimed and he rejected them all. The defendants paid the $150 in satisfaction of the judgment rendered in favor of the husband and the appeal is one taken by the wife from that part of the judgment which rejected her demands in toto.
In her petition she claimed that she was knocked unconscious by the impact of the was greatly shocked and suffered great pain for which she asks $500. She is a school teacher and alleges that, because of the accident, she lost three weeks work at school and therefore seeks to be paid that part of her monthly salary or the sum of $62. She alleges that she incurred medical expenses at a drug store in Donaldsonville amounting to the sum of $10 which she also seeks to be paid and finally sets out that she was pregnant at the time of the accident and because of the shock she sustained and the injuries she received she had a miscarriage and is therefore entitled to recover the sum of $2000 for that.
The trial judge filed a written opinion in the record in which, after analyzing each demand, and the proof offered by the plaintiff in connection with each, gives his reasons for rejecting them all.
[1] Taking up the first item of damage, plaintiff, when asked what happened to her at the time the truck hit her car states that she was momentarily knocked unconscious and was dazed. However she says that upon regaining consciousness she got out of the car, looked back to see whether the truck driver was going to stop because she did no think that he would do so as he drove about two blocks after the impact. Immediately following this she says she took the license number and asked the driver what was the matter with his truck as he could have killed the children in her automobile. She does not say anything about having sustained any injuries which caused her any pain or suffering, stating merely that she suffered a severe shock or a jar. Later on she says that she suffered a pain across her breast, inferring that that was because of her having been thrown over the steering wheel. Naturally, if she was able to look back and saw that the truck kept going, from which she surmised that probably the driver would not stop at all, she must not have been unconscious. Following that, she says she walked up to the truck and spoke to the driver trying to find out what happened. All of this would indicate that she readily realized and understood what went on at the moment and it is hard to conceive that a person acting in that manner would have lost consciousness as she claims she did. The truck driver corroborates her testimony about her walking up to meet him on the road and that she had a *Page 51 
conversation with him. Apparently he did not notice that she was dazed or that she was suffering any at that time. With regard to the pain she says she suffered from later on across her breast it seems, from her testimony, that it is so involved with her claim that she was pregnant and that the accident brought on a miscarriage, it would be difficult to assess damages for the one item apart from the other. She did not complain to anyone right at the time about suffering this pain, she looked after the children who were with her and as the car was not incapacitated in any way, she got in and drove in to Donaldsonville.
We hold therefore, that on this item, the trial judge was correct in concluding that the evidence, rather than proving the same, tends to disprove it.
[2] With regard to the next two items, the one for medical bills and that for loss of salary, counsel for the defendants, during the trial of the case, raised the very important point on which they should have been sustained. They objected to any testimony concerning them for the reason that if there was any such damage recoverable they were claims of the community existing between the plaintiffs, husband and wife, and therefore should have been presented by the husband on behalf of the community. That is correct; see Jones v. Vernon Parish School Board, La. App., 161 So. 357; Danove v. Mahoney et al., La. App., 176 So. 404. The objection should have been sustained and the testimony excluded.
The last and most important claim presented is the one arising out of plaintiff's alleged miscarriage. There are two points to be considered in passing on a claim of this character. The first relates to the existence, vel non, of a condition of pregnancy without which, naturally, there could be no miscarriage, and the second, assuming that pregnancy did exist, was the miscarriage caused by the accident complained of.
[3] In considering such a claim we have to realize that we are dealing with a matter which, in its incipiency, is one that is very personal to, and sometimes very confidential between the parties involved. In this case, if pregnancy existed it was in a very early stage, according to the plaintiff's own testimony. Generally, when the condition is suspected these days, a physician is consulted and although it is shown that on another occasion when plaintiff had a similar suspicion she immediately consulted a doctor, on the occasion in question she did not do so. As a matter of fact it was not until two weeks after the accident, during which time she says she experienced considerable pain and suffering, that she went to see Dr. E.A. Schexnayder and after telling him about the accident she had been in, told him that she thought she was pregnant. She also complained of pains in the chest and having headaches. Dr. Schexnayder examined her and testifies that he made a definite diagnosis of secondary anemia. He states also that he made an examination to find out whether she was pregnant or not and did make a tentative diagnosis of possible pregnancy. This constitutes all the proof found in the record that plaintiff was pregnant.
According to the plaintiff and her husband it was not until the week following her visit to Dr. Schexnayder's office that she miscarried. They both testify that she became violently sick at about two o'clock in the morning and suffered intensely until five o'clock when she miscarried. They described, in the manner of lay people, what occurred and, to the lay mind, it would seem possible that there had been a miscarriage. However, notwithstanding the fact that she had gone to see Dr. Schexnayder the week before because she thought she was pregnant, and had had this accident, and notwithstanding the fact that she suffered these terrible childbearing pains from two o'clock to five o'clock in the morning, and even then delivered a substance which she claims was the miscarriage, they never called a doctor in nor did she go to see the doctor after all of this had occurred. It struck the district judge, as it strikes us, that their failure to have called in the doctor on that occasion, or at least to have gone to see him afterwards and mention to him what had happened, casts a very serious doubt over their testimony.
There is considerable testimony given by Dr. Schexnayder as well as by Dr. Percy LeBlanc on the question of pregnancy and *Page 52 
miscarriage. It is all of a professional and technical nature and whilst they admit that it is difficult in certain cases to say when pregnancy begins or when a miscarriage occurs, the sum and substance of their testimony is that there was no miscarriage in this case. The trial judge concluded that there was not sufficient testimony to support this claim and we again agree with him in the conclusion he reached.
The judgment appealed from is affirmed at the costs of the appellant herein.